788 F.2d 1443
 David Livingston FUNCHESS, Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Secretary, Department of Corrections,
State of Florida, R.C. Dugger, Superintendent,
Florida State Prison, Respondents-Appellees.
 No. 86-3259.
 United States Court of Appeals,
Eleventh Circuit.
 April 22, 1986.
Rehearing En Banc Denied April 22, 1986.
 
 Larry Helm Spalding, Mark Evan Olive and Michael A. Mello, Office of Capital Collateral Representative, Tallahassee, Fla., for petitioner-appellant.
 Richard E. Doran, Asst. Atty. Gen., Miami, Fla., for respondents-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before GODBOLD, Chief Judge, RONEY and FAY, Circuit Judges.
 PER CURIAM:
 
 
 1
 In 1975, a Duval County jury found David Livingston Funchess guilty of two counts of first degree murder.[1] He was sentenced to two death penalties. After exhausting his state remedies,[2] Funchess filed a habeas corpus petition in the United States District Court for the Middle District of Florida. The district court denied relief. On appeal, a panel of this court affirmed. Funchess v. Wainwright, 772 F.2d 683 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1242, 89 L.Ed.2d 349 (1986).
 
 
 2
 Funchess is presently scheduled to be executed in Florida's electric chair at 7:00 a.m. on April 22, 1986. On March 5, 1986, Funchess filed a petition for state habeas corpus relief and an application for a stay of execution with the Supreme Court of Florida. On April 17, 1986, the court denied Funchess' claim. Funchess v. Wainwright, 486 So.2d 592 (Fla. 1986).[3] On April 20, 1986, Funchess again sought relief in the Circuit Court of Duval County, Florida. On April 21, 1986, that court denied Funchess' petition and the Supreme Court of Florida affirmed. Funchess v. State, 487 So.2d 295 (Fla. 1986).[4]
 
 
 3
 Thus, Funchess turned for a second time to the United States District Court for the Middle District of Florida. The district court conducted a hearing at 5:00 p.m. and at 10:25 p.m. entered an order dismissing Funchess' petition and denying his application for a stay of execution. On appeal, Funchess raises six issues: (1) whether Funchess was competent to stand trial and to be sentenced; (2) whether the prosecutor misinformed the jury of the jury's sentencing responsibilities in violation of Caldwell v. Mississippi, --- U.S. ----, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); (3) whether the trial judge and jury were deprived of considering evidence in support of non-statutory mitigating factors because of trial counsel's belief that he was limited in his investigation and presentation of mitigating circumstances; (4) whether racial and sexual discrimination prompted Funchess' death sentence; (5) whether execution by electrocution constitutes cruel and unusual punishment; and (6) whether the death qualification process in this case was unconstitutional.
 
 
 4
 Funchess' first argument is that he was not competent to stand trial because he was suffering from post-traumatic stress disorder ("PTSD"), a debilitating brain dysfunction, which resulted from his service in the United States Marine Corps in Vietnam. Although at the time of Funchess' trial, a sanity hearing was held and Funchess was adjudged sane, see Funchess, 341 So.2d at 763, he argues that PTSD was unknown at the time of his trial in 1975 and his resentencing in 1979 and that the symptoms of the disease were therefore not recognized.
 
 
 5
 The mental disorder known as PTSD was not generally recognized until the publication of the third edition of the Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association) in 1980. By May 3, 1982, Dr. John Russell Smith diagnosed Funchess as having PTSD. In his 1982 report, Dr. Smith states: "Mr. Funchess is currently suffering a severe form of psychiatric disorder known as 'Post Traumatic Stress Disorder, Chronic.' " This report was based on information from various sources including a clinical interview and reports of family interviews. In 1986, Dr. Smith reviewed his earlier diagnosis in light of recent affidavits of friends and relatives of Funchess describing Funchess' behavior after returning from Vietnam. In a written report dated April 19, 1986, Dr. Smith concluded: "The data from the affidavits together with the other existing data strongly confirm my earlier diagnosis of a severe Post Traumatic Stress Disorder...." (emphasis added).
 
 
 6
 Funchess' first petition for federal habeas corpus relief was filed in July of 1982. Funchess, 772 F.2d at 687. Funchess also filed an amended petition for writ of habeas corpus which the district court denied in November, 1984. Id. As established above, at the time these petitions were filed, Funchess had been clearly diagnosed as suffering from PTSD.
 
 
 7
 As we have stated, where an issue was not previously presented[5] in a federal habeas corpus petition, "petitioner must demonstrate the failure to present the ground in the prior proceeding was neither the result of an intentional abandonment or withholding nor the product of inexcusable neglect." Witt v. Wainwright, 755 F.2d 1396, 1397 (11th Cir.) (citations omitted) (emphasis added), rev'd on other grounds, --- U.S. ----, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). We find that petitioner has not met his burden under this standard. It is clear that Funchess was diagnosed as suffering from PTSD as early as May 1982. However he neglected to raise this issue in either of his petitions for federal habeas corpus relief. We therefore conclude that Funchess' claim of incompetency is barred under the doctrine of abuse of the writ of habeas corpus for failure to raise the issue in previous federal petitions.
 
 
 8
 Our review of the record reveals that petitioner's second claim regarding the Caldwell issue is without merit. The allegations of the petition for writ of habeas corpus, viewed in the light most favorable to the petitioner, do not support the claim that the state prosecutor's closing arguments at the trial and capital sentencing proceeding diminished the jury's sense of responsibility for sentencing under Caldwell v. Mississippi, --- U.S. ----, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
 
 
 9
 Petitioner's third claim that the trial court and jury were deprived of evidence in support of non-statutory mitigating factors because of trial counsel's belief he was limited in his investigation and presentation of mitigating circumstances was examined and rejected in Funchess, 772 F.2d at 689-90. This claim is the same issue previously presented to this court as a claim of ineffective assistance of counsel and as such is an abuse of the writ.
 
 
 10
 Petitioner's fourth claim is that the Florida death penalty is unconstitutionally applied due to systematic racial and sexual discrimination. Moreover, he also claims particularized discrimination in his trial, i.e., that the state emphasized the race and sex of petitioner and of the victims in allegedly prejudicial remarks. Both claims are meritless. As regards the former claim of systematic discrimination, petitioner relies for support upon the same generalized statistical evidence which has previously been rejected by this court and the Supreme Court. See Thomas v. Wainwright, 767 F.2d 738 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986), and cases cited therein. As regards petitioner's latter claim of particularized discrimination, our review of the record simply does not support it. We conclude that none of the remarks relied upon by petitioner are of the type upon which a finding of prejudice would be based.
 
 
 11
 Petitioner's fifth claim that the sentence of death by electrocution is cruel and unusual is foreclosed by Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979), which held that death by electrocution is not unnecessarily tortious and wantonly cruel so as to constitute cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. The court in Spinkellink relied upon In Re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890) (where the Court upheld a New York statute providing for electrocution as the method of carrying out a sentence of capital punishment was constitutional). See also Sullivan v. Dugger, 721 F.2d 719 (11th Cir.1983) (relying on Spinkellink and In Re Kemmler in holding that death by electrocution is not cruel and unusual punishment).
 
 
 12
 Funchess' final claim is that the exclusion of jurors opposing the death penalty from the trial denied him a trial by a fair cross-section of the community and created a guilt-prone jury. While the Eighth Circuit has accepted Funchess' claim in Grigsby v. Mabry, 758 F.2d 226 (8th Cir.), cert. granted sub nom., Lockhart v. McCree, --- U.S. ----, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985), this circuit has consistently rejected the argument. Jones v. Smith, 786 F.2d 1011, 1012 (11th Cir.1986) (citing cases). In fact, "[w]e have been unable to find any case in which this Court has stayed an execution pending appeal to this Court because of the Grigsby issue since that issue has been settled by our decisions." Thomas v. Wainwright, 788 F.2d 684, 689 (11th Cir.1986) (quoting Jones, 786 F.2d at 1012). After this court denied a stay on the Grigsby issue in Thomas, the United States Supreme Court denied certiorari and a stay, thus confirming the decisions in this Court that such cases need not be stayed to await the decision in Lockhart. We thus abide by the controlling precedent and deny Funchess the relief he requests.
 
 
 13
 The dismissal of the petition for a writ of habeas corpus is affirmed. The application for a certificate of probable cause is denied. Because of the lateness of the hour we do grant a limited stay of execution until 12 o'clock noon, Tuesday, April 22, 1986.
 
 
 
 [1]
 While robbing a liquor store in Jacksonville, Florida, Funchess stabbed Anna Waldrop and Clayton Ragan to death. Another woman was also stabbed and remains comatose as a result. The trial judge found that the killings "are truly some of the most senseless, heinous and horrible murders that have ever taken place in the City of Jacksonville." See Funchess v. State, 341 So.2d 762, 763 (Fla.1976), cert. denied, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977)
 
 
 [2]
 The course of the state proceedings was detailed in Funchess v. Wainwright, 772 F.2d 683, 687 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1242, 89 L.Ed.2d 349 (1986). We therefore need not again recite the complex procedural history of the case
 
 
 [3]
 We do not know whether Funchess petitioned the United States Supreme Court for certiorari following this decision
 
 
 [4]
 We do not know whether Funchess petitioned the United States Supreme Court for certiorari following this decision
 
 
 [5]
 Arguably, the issue of competency to stand trial was presented to this court in our 1985 decision as part of a contention that counsel failed to investigate evidence of Funchess' mental and emotional capacity. This court held that his psychological evaluation [by Dr. Ernest Miller, in 1975] indicated that he was competent to stand trial. 772 F.2d at 689. Moreover, we found that counsel for Funchess stated that Funchess acted competently in assisting him in preparation of the case for trial. Id. Thus the evidence presently offered can be viewed as additional evidence relating to an issue found against him in 1975